UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT F. LACEY,                          Case No. 16-14363

Plaintiff,                               Linda V. Parker
          v.                             United States District Judge

COMMISSIONER OF SOCIAL                   Stephanie Dawkins Davis
SECURITY,                                United States Magistrate Judge

Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 16, 20)**

# I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On December 15, 2016, plaintiff Scott F. Lacey filed the instant suit. (Dkt.

1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Linda V. Parker referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a

period of disability and disability insurance benefits. (Dkt. 3). This matter is

before the Court on cross-motions for summary judgment. (Dkt. 16, 20).

B.   <u>Administrative Proceedings</u>

Plaintiff filed the instant claim for a period of disability and disability insurance benefits on April 24, 2014.  (Tr. 38).[1]  The claims were initially disapproved by the Commissioner on June 12, 2014.  (Tr. 38).  Plaintiff requested a hearing and on October 20, 2015, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Ena Weathers, who considered the case *de novo*.  (Tr. 38).  In a decision dated December 3, 2015, the ALJ found that plaintiff was not disabled.  (Tr. 48).  Plaintiff requested a review of this decision.  (Tr. 7).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on November 2, 2016, denied plaintiff's request for review.  (Tr. 1); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED IN PART**, that defendant's motion for summary judgment be **DENIED IN PART**, and that the findings of the Commissioner be **REVERSED AND REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

---

[1] The Administrative Record appears on the docket at entry number 11.  All references to the same are identified as "Tr. __", referring to the administrative record page number found in the lower right corner of each page.

## II.    ALJ Findings

Plaintiff, who was born in 1961, was 51 years of age on the alleged onset of disability ("AOD") date, and has past relevant work as a maintenance worker.  (Tr. 46).  Plaintiff stopped working as of the AOD, April 29, 2013.  The ALJ applied the five-step disability analysis and found at step one that plaintiff had not engaged in substantial gainful activity since April 29, 2013.  (Tr. 40).  At step two, the ALJ found that plaintiff's osteoarthritis shoulder pain status post right rotator cuff tear repair, joint pain, arthritis in his hands, sciatica, anxiety disorder, and depression were "severe" within the meaning of the second sequential step.  (*Id.*).  However, at step three, the ALJ found no evidence that any of plaintiff's impairments alone or in combination met or medically equaled one of the listings in the regulations. (Tr. 41).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes or scaffolds; can occasionally stoop and crouch; can occasionally reach overhead bilaterally; and can frequently perform fine fingering and handling.  The claimant must avoid concentrated exposure to extreme cold.  The claimant is limited to tasks without strict production demands.

(Tr. 42).  At step four, the ALJ found that plaintiff was unable to perform any past relevant work.  (Tr. 46).  At step five, the ALJ denied plaintiff benefits because she found that there are jobs that exist in significant numbers in the national economy that plaintiff could perform.  (*Id.*).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (internal quotation marks

omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul.

96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

      C.    <u>Analysis and Conclusions</u>

          1.    RFC/Hypothetical Question

              a.    Parties' Arguments

Plaintiff argues that the ALJ's residual functional capacity ("RFC") assessment is inconsistent with the medical evidence.  The ALJ gave considerable weight to treating physician Dr. Plomaritis's opinion that plaintiff can lift no more than 5 pounds with his right arm, 20 pounds with both arms, and has 60 degree abduction.  (Dkt. 16, at p. 6).  However, the RFC does not mention these limitations.  (*Id.*).  Therefore, the RFC is inconsistent with these limitations. Plaintiff further states that the jobs listed by the vocational expert: assembler, packer, and sorter, did not take into account Dr. Plomaritis's work restrictions. (*Id.*).  Plaintiff also argues that the RFC is inaccurate because it fails to include any limitations for his right upper extremity.  (*Id.* at p. 9).

Plaintiff argues that the ALJ failed to provide a narrative discussion on how the evidence supports his conclusions.  More particularly, plaintiff complains that the ALJ did not provide citations to specific medical facts and non-medical evidence as required by Social Security Ruling 96-8p.  (*Id.* at p. 8).  Plaintiff insists that while the Regulations require the ALJ to resolve inconsistencies in the

evidence and explain the effects of the claimant's symptoms on the claimant's ability to work, the ALJ did not do this.  (*Id.*).

The Commissioner responds that the ALJ properly considered Dr. Plomaritis's opinions, and the RFC is consistent with the medical opinions.  The Commissioner acknowledges that Dr. Plomaritis limited plaintiff to lifting 5 pounds (sometimes 7.5 pounds) with his right arm and 20 pounds with both arms, (Dkt. 20, at p. 10; Tr. 275, 279, 282, 285), and that the ALJ gave this opinion considerable weight.  (Dkt. 20, at p. 10; Tr. 43).  However, according to the Commissioner, the ALJ accounted for this limitation by assessing plaintiff a "light work" RFC that includes lifting no more than 20 pounds.  (Dkt. 20, at p. 10-11; 20 C.F.R. § 404.1567(b)).  Dr. Plomaritis restricted plaintiff to lifting no more than 20 pounds.  Thus, the RFC is consistent with Dr. Plomaritis's opinions.  The Commissioner cites *Campbell v. Comm'r of Soc. Sec.*, 2014 WL 7011116, at *8 (W.D. Va. Dec. 11, 2014), for the proposition that a "light work" RFC does not require that both upper extremities be fully functioning.  (Dkt. 20, at p. 11). Rather, according to *Campbell*, a person can perform light work if they can lift 20 pounds, even with only one arm.  (*Id.*).  Dr. Plomaritis said plaintiff could lift 20 pounds, and that is what the ALJ assessed.  (*Id.*).  Thus, the ALJ did include Dr. Plomaritis's limitations.  The Commissioner also argues that the light work RFC accounts for plaintiff's upper right extremity.  Plaintiff bears the burden of

establishing RFC limitations, and he has not shown that further limitations were needed here.  (*Id.*).

Additionally, the Commissioner argues that the ALJ reasonably relied on the vocational expert's ("VE") testimony that an individual with plaintiff's RFC (recited in the ALJ's second hypothetical to the VE) could perform the assembler, packer, and sorter jobs.  (*Id.* at p. 15).

The Commissioner contends that the ALJ's decision reveals that she reviewed Dr. Plomaritis's records in detail and discussed the rest of the record as well, citing many specific medical facts.  Consequently, there is no error in the ALJ's analysis.  (*Id.* at p. 12; Tr. 43-45).  The ALJ properly considered the record and cited substantial evidence for the RFC.  (*Id.* at p. 14).

       b.    Analysis

       1.    RFC

Plaintiff's argument that the RFC does not encompass any restriction for his right upper extremity or his weight lifting and 60 degree abduction restrictions is partially correct.  Although plaintiff characterizes a right upper extremity limitation as being separate from his weight lifting and abduction restrictions, it appears those restrictions were recommended to account for his right upper extremity impairment, i.e. his shoulder problems.  Dr. Plomaritis gave those restrictions due to plaintiff's right shoulder issues.  (*See* Tr. 275, 282, 283, 285, 286, 289).

Therefore, plaintiff's right upper extremity claim of error is subsumed in his

weight lifting and abduction claims of error.  Contrary to plaintiff's contention, his

weight lifting restrictions are encompassed in a light work RFC.  However, his 60

degree abduction limitation is not encompassed in the RFC, and therefore remand

is appropriate.

> A light work RFC provides the following, in pertinent part:

>> Light work involves lifting no more than 20 pounds at a
>> time with frequent lifting or carrying of objects weighing
>> up to 10 pounds.  Even though the weight lifted may be
>> very little, a job is in this category when it requires a
>> good deal of walking or standing, or when it involves
>> sitting most of the time with some pushing and pulling of
>> arm or leg controls.

20 C.F.R. § 404.1567(b).  Dr. Plomaritis limited plaintiff to lifting 5 pounds with

the right arm and 20 pounds with both arms.  That plaintiff can lift 20 pounds is

consistent with an RFC that limits lifting to 20 pounds, occasionally, and the

regulation does not provide otherwise.  Plaintiff cites to no authority for the

proposition that the ability to lift 20 pounds only when using both arms falls

outside of a light work RFC that limits plaintiff to lifting 20 pounds.  It is

plaintiff's burden to demonstrate that he is more limited than what the RFC

assessed.  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir.

1993) ("Plaintiff has the ultimate burden of establishing the existence of

disability."); 20 C.F.R. § 404.1512(a) ("[Y]ou have to prove to us that you are

blind or disabled.").  Plaintiff has not met his burden.

In addition, the decision in *Campbell v. Comm'r of Soc. Sec.*, 2014 WL

7011116, at *8 (W.D. Va. Dec. 11, 2014), is instructive.  In *Campbell*, the plaintiff

had limited use of his right arm.  *Id.*  In fact, plaintiff's treating physician opined,

amongst other things, that he; (1) could lift fewer than ten pounds with his right

arm, (2) could occasionally push and pull, (3) had limited ability to reach in all

directions, and (4) had limited gross- and fine-motor function.  *Id.* at 7.  The

plaintiff argued that, because of this limited use of his right arm, he could not

perform light work which requires frequent use of both arms.  *Id.*  The court held

that the ALJ had not erred in assessing the RFC because a light work RFC does not

require two fully-functioning arms.  *Id.*  The court cited cases in which an arm

amputee was found capable of performing a limited range of light work.  *See e.g.*,

*Reynolds v. Astrue*, 390 Fed. Appx. 612, 612 (8th Cir. 2010) (ALJ's finding that

left-arm amputee was able to perform a limited range of light work was supported

by substantial evidence); *Carey v. Apfel,* 230 F.3d 131, 146 (5th Cir. 2000) (ALJ's

finding that amputee could perform listed jobs with remaining arm and hand was

supported by substantial evidence); *Thomas v. Comm'r Soc. Sec.*, 2013 WL 66538,

at *1 (D.Md.  Jan. 2, 2013) (same).  The reasoning of those cases is persuasive:

since the regulation for light work merely provides that one must be able to lift 20

pounds frequently, the absence or non-functionality of a second arm is not dispositive of a finding for a limited range of light work. This is because the central question is whether the claimant can lift 20 pounds, not what combination of arm usage – one arm only or both arms together – the claimant must muster in order to lift the stated amount. There is simply no reason to believe, and plaintiff has not set forth authority for the position, that the regulation requires a claimant to be able to lift 20 pounds with a single arm, thereby excluding those who must use both arms when the regulation does not so provide. Plaintiff's doctor restricted him to lifting 5 pounds with the right arm and 20 pounds with both arms. This restriction is in accord with the light work RFC weight lifting restrictions. Thus, there is no error in failing to include plaintiff's weight lifting restrictions in the RFC; indeed, they already are included.

Plaintiff also cites no authority for the contention that Dr. Plomaritis's 60 degree abduction limitation is not encompassed in a light work RFC. However, unlike the case of plaintiff's weight lifting restrictions, the light work RFC does not appear to provide a limitation that encompasses a 60 degree abduction limitation. Rather, the RFC limits plaintiff to light work with the added relevant restriction of occasional overhead reaching bilaterally. In *Mitchell v. Colvin*, 2015 WL 500183 (W.D. Wash. Feb. 2, 2015), a medical opinion given some weight stated that the plaintiff had only 90 degree abduction in her left shoulder. *Id.* at *2.

The ALJ had limited the plaintiff to occasionally reaching overhead with the left arm, and placed no restriction on other over-the-shoulder reaching. *Id.* However, the ALJ did not discuss how plaintiff could occasionally reach overhead with the left arm considering his 90 degree abduction restriction. *Id.* The *Mitchell* court held that because of the lack of discussion and because the VE did not clarify whether plaintiff could perform the jobs identified with this restriction, the ALJ's decision was not supported by substantial evidence. *Id.* at *2-3. *Cf. Walker v. Astrue*, 2009 WL 586858, at *18 (E.D. Mo. Mar. 6, 2009) (no error in RFC that limits plaintiff to occasional movement of the left arm greater than 90 degrees when evidence supported that plaintiff's abduction was limited to 90 degrees on the left arm). Here, the ALJ did not discuss how plaintiff is able to perform occasional overhead reaching bilaterally with a 60 degree abduction limitation. And, as explained more fully below, the VE did not explain whether the jobs identified account for a 60 degree abduction limitation. Failure to account for the limitation or to explain why the limitation was not needed in the RFC amounts to reversible error.

Since the undersigned recommends remand on the grounds explained above, there is no need to discuss plaintiff's other claim of error in the RFC.

2.      Hypothetical Question to the Vocational Expert

The ALJ's findings at Step Five are not supported by substantial evidence because of the ALJ's failure to include plaintiff's specific restrictions of weight lifting and 60 degree abduction in the hypothetical to the VE.  This error warrants remand.

The assessed RFC is used in a hypothetical question to the VE at Step Five to determine whether there are jobs that exist in significant numbers in the national economy that plaintiff could perform.  *Cole*, 661 F.3d at 939.  The hypothetical question to the VE does not need to include a list of the claimant's medical conditions.  *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Rather, the "hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions."  *Id.* (citing *Foster v. Halter,* 279 F.3d 348, 356 (6th Cir.2001) and *Varley v. Sec'y of Health &Human Servs.,* 820 F.2d 777, 780 (6th Cir.1987)).  It is the Commissioner's burden at Step Five to show that the plaintiff possesses the capacity to perform other substantial gainful activity which exists in the national economy.  *Foster,* 279 F.3d at 354.  This burden is met when there is "a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Edu. & Welfare,* 587 F.2d 321, 323

(6th Cir. 1978)).  "A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that *accurately* sets forth the plaintiff's physical and mental impairments."  *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (citing *id.*) (emphasis added).

Here, at Step Five, the VE determined that an individual with plaintiff's characteristics and RFC could perform the following jobs: packer, DOT code 784.687-042; sorter, DOT code 692.685-182; and assembler, DOT code 731.687-034.  (Tr. 82-3).  This determination is not supported by substantial evidence because it is not clear that these jobs account for plaintiff's lifting and abduction restrictions.

There is case law suggesting that there may be harmless error where the hypothetical question failed to account for a restriction but the jobs the VE identified could still be performed even if the restrictions were included.  *See, e.g., Bennett v. Colvin*, 2015 WL 574631, at *5 (E.D. Ky. Feb. 11, 2015) (the court found harmless error in the relied-upon hypothetical that did not include a limitation of "simple instructions" even though a treating physician given great weight assessed that limitation.  The court held, after distinguishing case law finding reversible error, that no harmful error existed because each job listed by the VE clearly accounted for the limitation.).  That case law is inapposite here.

18

The Sixth Circuit is not quick to find harmless error in situations similar to that at hand.  In *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), the hypothetical to the VE did not include restrictions in pace, speed, and concentration although both a physician and the ALJ found that restriction.  *Id.* at 516.  The court held that, "[b]ecause the controlling hypothetical inadequately described Ealy's limitations, the expert's conclusion that Ealy could work as an assembler, inspector, packer, or production worker does not serve as substantial evidence that Ealy could perform this work."  *Id.* at 517.  The case was remanded. *Id.*

Where the jobs found at Step Five are not clear whether they encompass restrictions not included in the RFC and hypothetical question, the failure to include the restrictions is not harmless.  In *Irvin v. Colvin*, 2013 WL 5477461 (E.D. Ky. Sept. 30, 2015), the district court found harmless error on this issue.  The plaintiff argued that the RFC did not account for all of the limitations the ALJ approved of, and thus the VE's response to the hypothetical that mirrored the RFC could not constitute substantial evidence that other jobs exist in the national economy that the plaintiff could perform.  *Id.* at *9.  Specifically, the RFC and subsequent hypothetical did not incorporate Irvin's assessed postural limitations. *Id.*  The district court found that the jobs the VE listed all incorporated Irvin's postural limitations as assessed by his physician.  *Id.* at *10.  Therefore, the error

was harmless.  However, the Sixth Circuit reversed *Irvin*.  *Irvin v. Comm'r of Soc. Sec.*, 573 Fed. Appx. 498 (6th Cir. 2014).  The court held that the ALJ erred in not incorporating into the RFC assessments from physicians the ALJ found credible. *Id.* at 502.  The Commissioner argued that the error was harmless because the jobs identified by the VE "required only frequent or occasional reaching, handling, or fingering, which was consistent with the doctors' assessments."  *Id.*  The VE found six jobs Irvin was capable of performing.  *Id.*  Although five of those jobs were clear that they could be performed by someone limited to only frequent reaching, handling, or fingering, the sixth job, "oil inspector," did not correspond to a job description in the DOT.  *Id.*  Because it was unclear whether that job "required only frequent—rather than constant—reaching, handling, or fingering, [the court held] it [was] unclear whether the Commissioner would have met his step-five burden of demonstrating that Irvin could perform this job if all of [the] restrictions had been included in the ALJ's hypothetical question to the VE."  *Id.*

Here, as in *Irvin*, the three jobs listed by the VE are not clear whether they can be performed by a person who can lift no more than 5 pounds with the right arm and no more than 20 pounds with both arms, and by an individual restricted to 60 degree abduction.  The jobs merely recite the "light work" RFC lifting restrictions and do not expound on overhead reaching.  Therefore, remand is appropriate because it is not clear whether the Commissioner reached her Step Five

burden of demonstrating that plaintiff could perform these jobs if his lifting

restrictions were included in the hypothetical question to the VE.[2]

Although, even with those restrictions, a significant number of jobs may still

exist that plaintiff can perform, the undersigned cannot reach that conclusion based

on the relied-upon hypothetical question.  In *Carpenter v. Comm'r of Soc. Sec.*,

2012 WL 381598 (W.D. Mich. Jan. 11, 2012), *report and recommendation*

*adopted*, *Carpenter v. Comm'r of Soc. Soc.*, 2012 WL 381592 (W.D. Mich. Feb. 6,

2012), the ALJ assessed a light work RFC with the limitation that the plaintiff

could lift and carry 20 pounds occasionally and 10 pounds frequently, consistent

with the requirements of light work.  *Id.* at *3.  However, the court noted that the

medical evidence reflected that the plaintiff could lift about 5 pounds with his left

---

[2] The undersigned notes the VE's response to plaintiff's attorney's question on hypothetical one. The attorney asked whether, if plaintiff were restricted to no overhead reaching bilaterally, there would be a reduction in the number of available jobs.  (Tr. 84-85).  The VE responded that the jobs he identified did not require reaching at an extreme level of height, and that there would be no change in the number of available jobs with that restriction.  (Tr. 85).  While this questioning may arguably have addressed plaintiff's abduction restrictions, hypothetical one did not include all of plaintiff's limitations that were ultimately adopted in the RFC.  *See Parmley v. Colvin*, 2015 WL 3619212, at *6 (E.D. Ky. June 9, 2015) ("In determining whether a claimant has the capacity to perform substantial gainful activity, the Commissioner may rely on a VE's testimony, so long as the question posed to the VE 'portray[s] a claimant's physical and mental impairments,' or in other words, 'what the claimant can and cannot do.'") (quoting *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516 (6th Cir.2010); *Mason v. Comm'r of Soc. Sec.*, 2012 WL 669930, at *11 (N.D. Ohio Feb. 29, 2012) ("In this circuit, it is well-established that a vocational expert's testimony only provides substantial support for an ALJ's decision when the testimony is elicited in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations.") (citing *Parley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987)).  Hypothetical one did not accurately portray plaintiff's physical impairments. Therefore, the VE's response to hypothetical one cannot provide substantial evidence at Step Five.  It is conceivable that a limitation of no overhead reaching combined with the limitations on weight lifting and those limitations in the RFC could yield a different answer from the VE.

arm and about 30 pounds with both arms.  *Id.* at \*7.  The ALJ's hypothetical

question to the VE did not specify that weight lifting restriction.  *Id.* at \*5.  The

court held that because the hypothetical did not include the weight lifting

restriction (other than that the RFC was for light work which includes lifting up to

20 pounds occasionally and 10 pounds frequently), the hypothetical contained

harmful error because it was "conceivable that the lifting restrictions in plaintiff's

left arm could reduce the number of jobs identified by the VE."  *Id.* at \*7.  *See also*

*Thorn v. Comm'r of Soc. Sec.*, 2016 WL 286430, at \*5 (S.D. Ohio Jan. 25, 2016)

(failure to include in hypothetical question a restriction of "environment without

demand for fast pace" rendered VE's testimony inadequate to serve as substantial

evidence to support "not disabled" determination where record supported that the

limitation existed); *cf. Laporte v. Comm'r of Soc. Sec.*, 2016 WL 5349072, at \*3

(W.D. Mich. Sept. 26, 2016) (ALJ included in hypothetical question a restriction

not included in the RFC.  Failure to include the restriction in the RFC was

harmless because VE testified that a sufficient number of jobs existed in national

economy taking into account the added restriction.).

   *Carpenter's* logic is persuasive here.  Had the hypothetical included

plaintiff's lifting and abduction restrictions it is conceivable that the number of

available jobs in the national economy would be reduced or that the listed jobs

would no longer be compatible with plaintiff's abilities.  As in *Carpenter*, the

ALJ's failure to include the restrictions in the hypothetical to the VE constitutes harmful error because substantial evidence does not support the conclusion that there are jobs that exist in significant numbers that plaintiff could perform.

Because the controlling hypothetical inadequately described plaintiff's limitations, it is unclear whether the jobs listed by the VE account for those limitations. And because it is conceivable that a hypothetical with those added limitations could further erode the number of available jobs, the undersigned recommends remand. On remand, the Commissioner should re-evaluate plaintiff's ability to perform light work with special attention given to plaintiff's limited ability to lift with his right arm and with both arms combined with plaintiff's abduction limitation.

2.     Vocational Expert's testimony and competence[3]

a.     Parties' Arguments

Plaintiff argues that the VE was incompetent to testify as an expert and that his testimony was inconsistent with the Dictionary of Occupational Titles ("DOT"). Plaintiff contends that the VE did not understand basic vocational terms. (Dkt. 16, at p. 10). During plaintiff's counsel's questioning on the impact of reducing fingering and handling from "frequently" to "occasionally," the VE stated

---

[3] Should the Court adopt the undersigned's recommendation for remand due to error in the omission of relevant limitations from the hypothetical questions, the remaining analysis will be rendered moot as the ALJ will be required to conduct a new VE examination to satisfy Step Five.

that it would reduce the available jobs by 10%.  Plaintiff's counsel pressed the VE who then indicated that it would reduce the available jobs by one-third.  (*Id.* at p. 12-13).  According to plaintiff, this exchange demonstrates that the VE lacked basic knowledge of common vocational terms, i.e. the difference between "frequently" and "occasionally," and thus that the VE was not competent to testify.

In addition to this lack of basic understanding, plaintiff argues that the VE's testimony is inconsistent with the DOT.  The VE testified that if a hypothetical person were off task 20% of the workday they would not be able to perform any work.  (*Id.*).  The VE further testified that this is consistent with DOT.  (*Id.*).  However, the DOT does not address being off task 20% of the workday.  (*Id.*).  This testimony in conjunction with the lack of understanding of basic vocational terms brings into question the VE's reliability.  (*Id.* at p. 14).  Plaintiff's attorney objected to the VE's testimony at the hearing.  (*Id.*).

After the hearing, plaintiff's attorney discovered that the VE obtained an honorary doctorate degree from a fictitious educational institution.  (*Id.*).  Plaintiff contends that if this were the only issue with the VE it would not be reversible error.  (*Id.*).  However, combined with the above-highlighted issues, the VE's competence adversely impacted the testimony.  (*Id.*).  Because of the problems associated with the VE's testimony, plaintiff contends he was denied a full and fair evaluation of the evidence.

The Commissioner responds that the VE was a competent expert witness. Although the ALJ spent a few minutes clarifying the second hypothetical's limitations (the hypothetical that matched the RFC), the VE found jobs that exist with those limitations.  (Dkt. 20, at p. 16).  Plaintiff's attorney then asked a series of questions that were detailed and confusing.  (*Id.*).  The VE asked for clarification several times and plaintiff's counsel eventually told the ALJ the he felt the VE was "too inconsistent with his statements."  (*Id.*; Tr. 87).  The exchange between the VE and plaintiff's counsel does not show that the VE is incompetent simply because the VE asked for clarification several times.  (Dkt. 20, at p. 16).

The Commissioner argues there is no error where the VE said that being off task 20% of the workday would result in no available jobs, and that this statement was consistent with the DOT.  (*Id.*).  The ALJ did not assess a 20% off task limitation, and thus the Commissioner states that that hypothetical had no effect on the outcome, and so any error is harmless.  (*Id.* at p. 18).  The Commissioner also states that there was no error here because the DOT says nothing about being off task, thus there could be no conflict between the DOT and the VE's testimony. SSR 00-04p requires the VE to explain any apparent unresolved conflict between the DOT and his testimony.  (*Id.*).  However, because there was no conflict, there was nothing the VE had to explain.  (*Id.*).

Finally, the Commissioner argues that the VE's honorary degree did not mean that the ALJ had to reject all of the VE's testimony.  (*Id.* at p. 19).  The Commissioner points out that the honorary degree is an irrelevant fact in the case. (*Id.* at p. 20).  Further, there was nothing fraudulent in the way the VE explained his qualifications; he did not mention the honorary degree at the hearing, his resume calls it an "honorary degree," and the ALJ did not rely on it in crediting the VE's testimony.  (*Id.* at p. 19-20).  Therefore, remand would be inappropriate.  (*Id.* at p. 20).

> b.    Analysis

The VE was properly qualified as an expert.  At the hearing and on plaintiff's counsel's questioning the VE testified to his background.  (Tr. 79-80). The VE explained that he worked as a vocational rehabilitation counselor with the State of Michigan for about 12 years and in private practice for 25 years.  (Tr. 79). Further, he stated he has a Master's degree in counseling from the University of Detroit.  (Tr. 80).  Plaintiff's counsel stated that he did not "have any issues" with the VE.  (*Id.*).  After the hearing plaintiff's counsel reviewed the VE's resume and discovered that the VE has an honorary degree.  (Dkt. 16, at p. 14).  The VE did not rely on this honorary degree to prove his qualification at the hearing.  As plaintiff's counsel agreed at the hearing, the VE's work experience and Master's degree qualified him as a vocational expert.  The record reveals that the VE had

ample training and experience—irrespective of his honorary degree—having earned a Master's degree in guidance and counseling as well as over thirty years of work experience. *See Duncan v. Colvin*, 2013 WL 5671486, at *3 (D. N.H. Oct. 17, 2013) (finding VE qualified where record showed VE "received a master's degree in vocational rehabilitation counseling and worked in that field for over 20 years."); *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 382 (D. N.J. 2013) (finding VE qualified where she had a Master's degree in Vocational Rehabilitation Counseling and practiced in the profession for 35 years). The undersigned finds no grounds to disturb the ALJ's finding that the VE qualified as a vocational expert.

Any inconsistency in the VE's testimony is harmless error because it occurred in response to hypotheticals that the ALJ did not rely on in coming to her decision. "Incongruous DOT codes and descriptions for other positions about which the VE testified but the ALJ did not rely upon are not material and do not require remand to rectify." *Rincon v. Comm'r of Soc. Sec.*, 2015 WL 12720299, at *8 (E.D. Mich. Aug. 24, 2015), *report and recommendation adopted*, 2016 WL 922945 (E.D. Mich. Mar. 11, 2016). Therefore, that the VE required clarification on the attorney's hypothetical is not material. Likewise, neither is the VE's alleged error in testifying that the 20% off task restriction was consistent with the DOT. Indeed, the DOT is silent as to time off task. Where the DOT is silent, "a VE's

testimony filling in the gaps does not raise a conflict." *See Trischler v. Comm'r of Soc. Sec.*, 2015 WL 5016600, at *25 (E.D. Mich. Aug. 24, 2015). Therefore, the VE was permitted to fill in the gaps here. Moreover, the ALJ did not rely on those hypotheticals. And, plaintiff cites no authority in support of the contention that a VE who makes a mistake in testifying and corrects the mistake after clarification is incompetent, and the undersigned knows of no such authority. As such, any error the VE made in response to the hypothetical question the ALJ did rely on is harmless because the VE corrected his testimony moments later. Therefore, remand on these claims of error is not warranted.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED IN PART**, and that defendant's motion for summary judgment be **DENIED IN PART**, and that the findings of the Commissioner be **REVERSED AND REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 15, 2018                              s/Stephanie Dawkins Davis
                                                     Stephanie Dawkins Davis
                                                     United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 15, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7850
<u>tammy_hallwood@mied.uscourts.gov</u>